# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# BECKLEY DIVISION

| | |
|---|---|
| **KALA SMITH** ) | |
| **Guardian and next friend of** ) | |
| **TYLER SMITH, a minor child,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO: 5:08-cv-00993** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for children's Supplemental Security Income (CSSI) under Title XVI of the Social Security Act. This case is presently pending before the Court on Plaintiff's Motion to Reverse or Remand (Document No. 13.) and Defendant's Motion for Judgment on the Pleadings (Document Nos. 13 and 15.) and Plaintiff's Reply. (Document No. 15.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 4 and 5.)

The Plaintiff, Kala Smith, as the guardian and next friend of her son, Tyler B. Smith (hereinafter referred to as "Claimant"), filed an application for child's SSI benefits alleging disability due to low birth weight. (Tr. at 17.) By decision dated September 24, 2003, Claimant was found disabled as of August 1, 2003, and granted benefits. (Tr. at 17, 35.) On October 16, 2003, it was determined that Claimant was no longer disabled as of October 1, 2006. (Tr. at 17, 42-45.) The decision was upheld on reconsideration after a disability hearing by a State agency Disability

Hearing Officer dated May 25, 2007.[1] (Tr. at 49-59.) On July 12, 2007, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 62.) The hearing was held on February 6, 2008, before the Honorable Brian P. Kilbane. (Tr. at 315-22.) By decision dated February 28, 2008, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 17-29.) The ALJ's decision became the final decision of the Commissioner on June 9, 2008, when the Appeals Council denied Claimant's request for review. (Tr. at 5-8.) On August 13, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

The Standard

A child is disabled under the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). With respect to medical improvement in children, the Social Security Regulations require the ALJ to perform a five-step sequential analysis to determine whether a child claimant should continue to receive benefits. 20 C.F.R. § 416.994a (2008).

The first inquiry under the sequence is whether there has been medical improvement as shown by a decrease in medical severity. Id. § 416.994a(a)(1) and (c). If there has been no medical improvement, the child is still disabled, unless certain exceptions apply. Id. § 416.994a(a)(1). If there has been medical improvement, the second inquiry is whether the impairment(s) the child had

---

[1] Claimant alleged that he continued to be disabled due to developmental delays, asthma, hearing loss, slow growth, and speech delays. (Tr. at 53.)

at the time of the Commissioner's most recent favorable determination or decision now meets or functionally equals the severity of the listing it met or equaled at the time. Id. If the child still meet or equals the same listing, the child is disabled, unless certain exceptions apply. Id. If not, the third inquiry is whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b) (2008). If the child is engaging in substantial gainful activity, he or she is found not disabled. Id. § 416.924(a). If the claimant is not, the fourth inquiry is whether the claimant has a severe impairment. Id. § 416.924(c). An impairment is not severe if it constitutes a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." Id. If a severe impairment is present, the fifth and final inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.924(d). If the claimant's impairment meets the requirements of Appendix 1, the claimant is found disabled and is awarded benefits. Id. § 416.924(d)(1). If it does not, the claimant is found not disabled. Id. § 416.924(d)(2). [2]

---

[2] If a child has a severe impairment or combination of impairments that does not meet or medically equal any listing, the ALJ must decide in view of six domains of functioning whether the child has limitations which "functionally equal the listings" of disabling conditions. *See* 20 C.F.R. § 416.926a(a).

The Regulations provide that if a child's severe impairments do not meet or medically equal the listings, the Commissioner will assess all functional limitations caused by the child's impairments. 20 C.F.R. § 416.926a(a). Functional equivalence can be shown when a child has two "marked" limitations or one "extreme" limitation in six domains of functioning. 20 C.F.R. § 416.926a(a), (b)(1). The six areas of functioning include: (I) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating to others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. *See* 20 C.F.R. 416.926a(b)(1)(I) - (vi); 65 Fed. Reg. 54,747 (2000). These domains are "broad areas of functioning intended to capture all of what a child can or cannot do." *Id.* § 416.926a(b)(1). The Regulations state as follows respecting how the Social Security Administration considers a child's functioning:
We will look at the information we have in your case record about how your functioning is affected during all of your activities when we decide whether your impairment or combination of impairments functionally equals the listings. Your activities are everything you do at home, at

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because there had been medical improvement in his condition as shown by a decrease in medical severity. (Tr. at 20, Finding No. 3.) Under the second inquiry, the ALJ found that Claimant's impairments no longer met or functionally equaled the severity of the listing they met or equaled at the time. (Tr. at 21, Finding No. 4.) Although the ALJ did not make an explicit finding at the third inquiry, i.e., that Claimant had not engaged in substantial gainful activity, he presumably found in favor of Claimant as he proceeded to the next inquiry. Next, the ALJ determined at the fourth inquiry that

---

school, and in your community. We will look at how appropriately, effectively, and independently you perform your activities compared to the performance of other children your age who do not have impairments.

See 20 C.F.R. § 416.926a(b). When evaluating a child's ability to function in each domain, several factors are taken into consideration to help determine whether the child's impairments affect his or her functioning and whether his or her activities are typical of other children his or her age who do not have impairments. *Id.* § 416.926a(g) - (l).

If a child has "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain, the Commissioner will find that the impairment functionally equals the listings, and the child will be found disabled. *Id.* § 416.926a(a). The Regulations define a "marked" limitation as when an impairment interferes seriously with the child's functioning, and is more than moderate, but less than extreme. 20 C.F.R. § 416.926a(e)(2)(I) (2007). A "marked" limitation also means when standardized tests are used as the measure of functional abilities, a valid score that is at least two, but less than three, standard deviations below the norm for the test. *Id.* The Regulations define an "extreme" limitation in a domain as when an impairment "very seriously" limits day-to-day functioning, or interferes "very seriously" with one's ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3)(I). "Extreme" limitation also means "a limitation that is 'more than marked.'" *Id.* This rating is given to the worst limitations. See id.

20 C.F.R. § 416.924a provides that in determining disability for children, all relevant information in the case record will be considered, including medical evidence, such as testing and opinions from medical sources "about the nature and severity of your impairment," and information from other people, including parents, other caregivers, and teachers. 20 C.F.R. § 416.924a. The Regulations further specifically provide that ALJs may ask for and consider opinions from medical experts regarding the nature and severity of a child's impairment and on whether the impairment(s). equals the requirements of any impairment listed in Appendix 1. *See* 20 C.F.R. § 416.927(f)(2)(iii). In considering these opinions, ALJs evaluate them using the factors as used for evaluating all opinion evidence, including the supportability and consistency of the evidence, and specialization of the source. *Id.*

Claimant suffered from the severe impairments of history of low birth weight, disruptive behavior disorder, asthma, and gastresophageal reflux disease. (Tr. at 21, Finding No. 6.) At the fifth and final inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 21, Finding Nos. 7 and 8.) On this basis, benefits were denied. (Tr. at 28, Finding No. 9.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on August 7, 2003, and was a preschooler as of October 1, 2006, and remained a preschooler through the date of the ALJ's decision. (Tr. at 21, Finding No. 5.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision and the Commissioner's Response

Claimant alleges that the ALJ erred in (1) using the phrase "less than marked" to describe Claimant's behavior and ability and (2) determining Claimant's deviation under the six separate domains. (Document No. 14 at 3-6.) The Commissioner asserts that Claimant's arguments are without merit and that the ALJ's decision is supported by substantial evidence. (Document No. 15 at 8-18.)

Analysis.

1. Less Than Marked Limitations.

Claimant first argues that the ALJ erred using the phrase "less than marked" to describe Claimant's behavior and ability. (Document No. 14 at 3.) Citing Becker ex rel. Baker v. Barnhart, 410 F.Supp.2d 757 (2005 WL 3683732), Claimant asserts that the phrase "can contribute to ambiguity and is grounds for remand." (Id.) Claimant asserts that "with said ambiguity established in the presiding ALJ's decision of February 28, 2008 this Court must remand said Notice of Decision - Unfavorable so that the presiding ALJ may remedy said ambiguity." (Id.)

The Commissioner asserts that Baker does not specifically hold that the Commissioner had committed legal error by using the phrase "less than marked." (Document No. 15 at 10.) Rather, the court recognized that the phrase "was a rating criteria that the Agency used when it assessed the degree of limitation a child's impairment(s) may cause in a functional domain." (Id.) The Court however, criticized the Commissioner for insufficiently articulating the basis for his findings

regarding the claimant's functioning in the domains of acquiring and using information and attending and completing tasks. (Id.) Thus, in the absence of legal authority, the Commissioner asserts that Claimant's argument on this point is without merit. (Id.)

The undersigned finds persuasive the Commissioner's argument and finds that Claimant's allegation in this regard is without merit. In the absence of any indication that the phrase "less than marked" is prohibited, the undersigned finds that the ALJ's use of the phrase is warranted under the regulations. The Court notes that Claimant merely points out that use of the phrase "less than marked," may lead to ambiguity, but does not identify how the ALJ's use of the phrase in the instant case caused any ambiguity. Accordingly, the Court finds that the ALJ's use of the phrase "less than marked" in assessing Claimant's limitations of moving about and manipulating objects, was proper and unambiguous.

2. <u>Domains</u>.

Claimant next alleges that the ALJ erred in determining the deviations caused by Claimant's condition because he acted as an expert. (Document No. 14 at 3-6.) Regarding the six domains, Claimant alleges that the ALJ should have determined that at least one of the domains was at least marked, if not severe. (Document No. 15 at 11.)

The Commissioner asserts that the ALJ did not act an expert in determining Claimant's deviations because by law, it was the ALJ who was responsible for determining whether Claimant's condition met or equaled, either medically or functionally, the requirements of an impairment in the Listings. (Document No. 15 at 10.) Thus, it was the ALJ who was responsible for assessing the deviations or limitations caused by Claimant's limitations. (Id.) The Commissioner notes that Claimant does not otherwise aver that Claimant's condition met or medically equaled the severity

requirements of an impairment in the Listings. (Id.) The Commissioner further asserts that the ALJ's determination regarding the six domains is supported by substantial evidence. (Id. at 13-18.)

The undersigned first finds that contrary to Claimant's assertion, the ALJ did not act as an expert in determining the deviations caused by Claimant's condition. As the Commissioner points out, pursuant to 20 C.F.R. §§ 416.925, 416.926, and 416.926a(n), it is the ALJ who ultimately is responsible for assessing Claimant's limitations. Accordingly, the ALJ did not exceed authority in assessing Claimant's limitations. The undersigned next finds that despite Claimant's assertion to the contrary, the Regulations do not accommodate a "severe" domain rating. See 20 C.F.R. § 416.926(a) (2008). Regarding the six domains, the undersigned further finds that the ALJ's determination that Claimant's impairments caused no limitation in the domain of acquiring and using information; a less than marked limitation in the domain of interacting and relating with others, moving about and manipulating objects, and caring for yourself; and no limitation in health and physical well-being, is supported by substantial evidence.

1. Acquiring and Using Information.

Regarding the first domain, that of acquiring and using information, the ALJ noted that results of the latest ELAP demonstrated that Claimant's cognitive functioning was age appropriate and that he was 91 percent effective in language. (Tr. at 25.) The ALJ specifically noted that his determination was supported by the evaluation of Dr. Thomas and the assessment of Dr. Reddy, in addition to Claimant's school records. (Id.)

On July 3, 2006, Dr. Uma Reddy, M.D., opined that Claimant had no limitation in acquiring and using information. (Tr. at 243.) She additionally opined that Claimant had less than marked limitations in attending and completing tasks, interacting and relating with others, moving about and

manipulating objects, and caring for yourself; and no limitation in health and physical well-being. (Tr. at 243-44.) She noted that Claimant had some problems with behavior, including noncompliance and tantrums, as well as mild deficiencies in attention and concentration. (Tr. at 243.)

On February 1, 2008, Dr. Carl E. Thomas, Ph.D., conducted a psychological evaluation of Claimant. (Tr. at 286-309.) Dr. Thomas indicated that there were no known deficit in Claimant's auditory or visual functioning that could negatively impact his acquiring and using information about his environment. (Tr. at 305.) Nevertheless, Dr. Thomas noted that Claimant did not participate in environmental identification which made it impossible to conclude confidently that there was integrity in that aspect of expressive language. (Id.) Claimant however, was able to receive information verbally and process auditory stimuli without any apparent challenge. (Tr. at 304-05.)

Claimant asserts that Dr. Thomas indicated that he was markedly limited in the domain of acquiring and using information based upon his score in the communication domain of the Vineland, which was at least two standard deviations below the mean. (Tr. at 305-06.) As the Commissioner points out however, "there was no indication that the criteria used in the Vineland's communication domain was completely commensurate with the criteria the ALJ was required to evaluate [Claimant's] functioning under § 416.926a(g)(2)(iii)." (Document No. 15 at 13.) Furthermore, Claimant's ELAP score on May 16, 2006, revealed no significant deficit in the cognitive area and his functioning was age appropriate. (Tr. at 194-95.)

Based on the foregoing, the undersigned finds that the ALJ's determination that Claimant had no limitation in the domain of acquiring and using information is supported by substantial evidence. Claimant's argument that the ALJ should have found a marked or an extreme limitation in this domain is without merit.

2. <u>Attending and Completing Tasks</u>.

The ALJ found that Claimant had a less than marked limitation in attending and completing tasks. (Tr. at 25-26.) He noted that the state agency opinion evidence revealed only mild deficiencies of attention and concentration and normal persistence and pace based on Claimant's performance on the ELAP, and that his pace and persistence were normal. (Tr. at 25.) The state agency consultants also opined that Claimant had less than marked limitations in this domain. (<u>Id.</u>) School records indicated that Claimant had difficulty focusing on one thing at a time, but that he could remember routines and schedules and was able to adjust to new routines. (<u>Id.</u>) Though Claimant had difficulty controlling impulses, he exhibited an age appropriate activity level. (<u>Id.</u>)

Though Dr. Thomas reported that Claimant did not attend to any stimulus for any significant length of time, the ALJ noted that Claimant was age appropriate for listening to story telling and exhibited verbal participation. Accordingly, the undersigned finds that the ALJ's decision that Claimant had a less than marked limitation in the domain of attending and completing tasks is supported by substantial evidence.

3. <u>Interacting and Relating With Others</u>.

The ALJ found that Claimant had a less than marked limitation in interacting and relating with others. (Tr. at 26.) He acknowledged that the scores on the ELAP revealed that Claimant functioned at a somewhat decreased level and that his mother reported tantrums and noncompliance. (<u>Id.</u>) Nevertheless, his mother reported that Claimant was accepted by his peers and got along fair with other children. (Tr. at 26, 194.) Though Claimant had a history of aggressive behaviors, his mother reported that he was a happy child at home and Ms. Robinson noted that Claimant generally was appropriate thought her interview. (<u>Id.</u>) Ms. Robinson opined that Claimant was three months

10

behind based on ELAP score. (Id.)

Claimant again asserts that Dr. Thomas's opinion demonstrates that he had a marked impairment in socialization. As the Commissioner notes however, Dr. Thomas noted that Claimant smiled appropriately and had fair speech production with normal rate and volume. (Tr. at 194-95.) As noted by the ALJ, Claimant's ELAP scores did not reveal any significant deficit in language and social areas. (Tr. at 194-95.) Ms. Robinson also noted that Claimant smiled and that though he was difficult to understand at times, she was able to understand him ask his mother a question. (Tr. at 194.) Accordingly, despite Claimant's tantrums, aggressive behavior, and noncompliance as reported by his mother, the substantial evidence supports the ALJ's finding that Claimant had a less than marked limitation in his ability to interact and relate with others.

    4. Moving About and Manipulating Objects.

The ALJ determined that Claimant had a less than marked limitation in moving about and manipulating objects. (Tr. at 27.) He noted that despite Claimant's history of asthma, stomach problems, and slow growth, he had exhibited good weight gain and his asthma was controlled by medication. (Id.) The ELAP reveals that Claimant had some deficiencies in gross and fine motor skills. (Tr. at 27, 194.) Nevertheless, as the ALJ noted, Ms. Robinson noted that Claimant's motor behavior was normal and that he walked with a normal posture and gait. (Tr. at 27, 195.) Furthermore, Dr. Thomas opined that Claimant did not have a significant limitation in the domain of moving about and manipulating objects. (Tr. at 307.) The medical evidence also reveals that Claimant had full range of motion of his extremities and normal motor behavior. (Tr. at 194, 199.)

Based on the foregoing, the undersigned finds that the ALJ's determination that Claimant had a less than marked limitation in the domain of moving about and manipulating objects is

supported by substantial evidence.

     5. Caring for Yourself.

The ALJ next determined that Claimant had a less than marked limitation in the ability to care for himself. (Tr. at 27.) The ALJ acknowledged, as discussed above, Claimant's ELAP score, which indicated that Claimant was three months behind, as well as his problems dealing with frustration. (Id.) Nevertheless, as discussed above, Claimant generally was cooperative during consultative examinations, with no marked deficiencies noted. (Id.) Dr. Thomas opined that Claimant was very limited in this domain because he was unable to put on his shoes and had to be told several times to get his underwear from the dresser. (Tr. at 27, 307-08.) However, as the ALJ found, Claimant was able to use a spoon for about 25% of his meal, used a fork with minimal assistance, was independent with a straw cup and regular cup, could pull down his pants, and could sometimes tell his mother when he had to use the bathroom. (Tr. at 236-37.) Additionally, Claimant was able to control his bowel and bladder movements most of the day and brush his teeth with help. (Tr. at 111.) Based on the foregoing activities, the undersigned finds that the ALJ's determination that Claimant had a less than marked limitation in the ability to care for himself is supported by substantial evidence.

     6. Health and Physical Well-Being.

Finally, the ALJ determined that Claimant had no limitation in health and physical well-being. (Tr. at 27-28.) The ALJ acknowledged Claimant's past medical conditions and summarized his past treatments. (Id.) He noted that Claimant continued in pre-school and that there was no record of him being treated on a frequent or emergency basis for any health problems. (Tr. at 28.) As the Commissioner notes, Claimant has failed to cite any evidence contradicting the ALJ's

finding, and therefore, the undersigned finds that the ALJ's determination in this regard is supported by substantial evidence.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion to Reverse or Remand (Document No. 13.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 15.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 30, 2009.

R. Clarke VanDervort
United States Magistrate Judge